**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DAMIEN WESTERLUND,<br>Plaintiff<br>v.<br>DOUGLAS COUNTY SHERIFF'S OFFICE, et al.,<br>Defendants | Case No.: 3:26-cv-00157-MMD-CSD |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Plaintiff Damien Westerlund, proceeding pro se, has filed a first amended complaint (FAC). (ECF No. 10.) The FAC's allegations arise from his roadside arrest for obstructing an officer, a violation of NRS 197.190. Plaintiff asserts claims for First, Fourth, Eighth, and Ninth Amendment violations as well as claims for sexual assault and failure to intervene.

After screening the FAC, the court recommends that the District Judge enter an order dismissing it in part and allowing it to proceed in part. Plaintiff has filed a separate motion for a stay, which the court recommends be denied. (EFC No. 1-3.)

## I. SCREENING

### A. Standard

"[T]he court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails

to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See, e.g.*, *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's First Amended Complaint**

In his FAC filed pursuant to 42 U.S.C. § 1983, Plaintiff sues multiple Defendants for events that occurred during his arrest: (1) Douglas County; (2) Deputy Sheriff Tyree Holdridge; (3) Deputy Sheriff Richard Rodriguez; (4) Deputy Sheriff Keenan Copp; (5) Deputy Sheriff Sal DeRosa; and (6) Deputy Sheriff Mark Brown. He alleges the following.

At 9:20 PM on March 6, 2024, Plaintiff and Johnathan Hollingsworth exited a shop owned by Plaintiff's father, Mike Simons, to retrieve personal items from Simons' car. (ECF No. 10, Ex. A.[1]) Plaintiff and Hollingsworth unlocked the car and began pulling items from the rear driver's side seat. (*Id.* at 1-6.) At the same time, Deputy Holdridge pulled his police vehicle alongside Simon's car.

Suspecting that Plaintiff was breaking into a vehicle, Holdridge greeted Plaintiff and asked him to identify himself. Plaintiff refused to identify himself and stated that the vehicle was owned by his father. Holdridge responded, "you're in a closed business area and it's all closed and I don't know this is your dad's vehicle." (*Id.*) Plaintiff remained uncooperative, so Holdridge ordered him to take a seat on the curb. "[S]orry I don't listen to you," Plaintiff replied. (*Id.*) Holdridge repeated his command and called for backup as Plaintiff demanded not to be touched.

[1] Many of Plaintiff's allegations are contained in his "Affidavit of Truth," which he has attached to the FAC as Exhibit A. Plaintiff has also attached various transcripts as Exhibits B–G. The court construes these exhibits as a continuation of the FAC. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

"[H]ave a fucking seat," Holdridge stated, as he grabbed Plaintiff and "slamm[ed]" him into Simons' car by "scooping" his legs. (*Id.*)

While Plaintiff was restrained on the ground, Holdridge applied a "Life-Threatening strangulation technique" by placing his knee on Plaintiff's neck, which caused him to lose airflow for "approximately 5 seconds." (ECF No. 10 at 4, Ex. A at 1.) At the same time, Holdridge bent Plaintiff's wrist backward, resulting in injury. (ECF No. 10, Ex. A at 1.) Plaintiff used his cellphone to call Simons: "dad there's a fucking cop on me, get him off." (*Id.*) Next, Holdridge commanded Plaintiff to roll on his stomach. "[N]o I'm not listening to you," Plaintiff replied. (*Id.*) Moments later, Simons reached the scene.

Simons explained to Holdridge there had been a misunderstanding: Plaintiff was simply retrieving personal items from Simons' car—not burglarizing the vehicle as Holdridge had originally suspected. (*Id.* at 2.) Holdridge expressed that he wanted to "wait for his backup to figure everything out." (*Id.*) When Deputies Copp and Rodriguez arrived, they helped arrest Plaintiff. Plaintiff alleges that, before placing him in a police vehicle, Copp groped his genitals during a frisk. (*Id.*) Police transported Simons and Plaintiff to a local jail for booking and afterward, state authorities charged Plaintiff with obstructing an officer under NRS 197.190. Plaintiff posted bail at $2,480 and was released.

On June 21, 2024, the East Fork Justice Court held a one-day bench trial regarding Plaintiff's charge of obstructing an officer. At the trial, the justice court found that—while officers had reasonable suspicion to detain Plaintiff—it could not be proven beyond a reasonable doubt that he obstructed an officer. (ECF No. 10, Ex. G at 27.) Thus, the justice court acquitted Plaintiff and exonerated his bail.

On March 6, 2026, Plaintiff filed an application to proceed in forma pauperis and a complaint in this court. (ECF No. 1.) The court granted the application and dismissed his complaint with leave to amend. (ECF No. 8.) Plaintiff filed his FAC on August 5, 2026, which the court screens below.

**1. Fourth Amendment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. As noted above, Plaintiff's claims of search and seizure of his person, seizure of his property, and excessive force are all properly evaluated under the Fourth Amendment.

a. **Seizure of Person**

The Fourth Amendment is violated when a person is unreasonably seized. *Graham,* 490 U.S. at 395–96; *see also Brower v. Cnty. of Inyo,* 489 U.S. 593, 595–600 (1989). In general, "every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." *Michigan v. Summers*, 452 U.S. 692, 700 (1981). "Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097–98 (9th Cir. 2013) (citation and quotation marks omitted).

However, even in the absence of probable cause, officers may stop and briefly detain a person for investigative purposes if they have "a reasonable suspicion supported by articulable facts for suspected criminal activity." *Terry v. Ohio,* 392 U.S. 1, 30 (1968). "The officer, of course, must be able to articulate something more than an inchoate and unparticularized

suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks and citation omitted).

Plaintiff alleges that Defendants unlawfully seized him without probable cause. But the factual allegations of the FAC tell a different story. According to the FAC, Holdridge observed Plaintiff taking items out of a car at night in a closed business area. When he approached Plaintiff to investigate further, Plaintiff became uncooperative, defensive, and obstinate. Under these factual allegations, Holdridge had reasonable suspicion to believe criminal conduct was afoot and, thus, he was justified in executing a brief investigative stop.[2] Plaintiff thus has not stated a colorable claim that his initial detention by Holdridge was in violation of the Fourth Amendment.

Reasonable suspicion transformed into probable cause when Plaintiff refused to submit to Holdridge's lawful stop. Plaintiff alleges that he repeatedly ignored Holdridge's commands to take a seat on the curb and physically resisted Holdridge's attempt to restrain him. Plaintiff's conduct gave officers probable cause to believe he was "willfully hinder[ing], delay[ing], or obstruct[ing]" a public officer in violation of Nevada's obstruction statute. NRS 197.190. Thus, because Plaintiff's *own* factual allegations in the FAC support a conclusion that the officers had probable cause to arrest him, he fails to state a colorable claim that he was arrested in violation of the Fourth Amendment. No additional allegations will cure the FAC of this defect. Thus, the court recommends that Plaintiff's Fourth Amendment claim be dismissed with prejudice.

---

[2] The justice court came to the same conclusion, and this court sees no reason to contradict that determination here.

**b. Excessive Force**

Claims of excessive force during an arrest apply an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). In assessing the objective reasonableness of a particular use of force, [the court] consider[s]:

> (1) "the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted," (2) "the government's interest in the use of force," and (3) the balance between "the gravity of the intrusion on the individual" and "the government's need for that intrusion.

*Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017); *see also Bryan v. MacPherson*, 630 F.3d 805, 823–24 (9th Cir. 2010) ("Stated another way, we must 'balance the amount of force applied against the need for that force.'").

This inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 395 (citation omitted). The most important is "whether the subject posed an 'immediate threat to the safety of the officers or others.'" *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc) (quoting *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc)).

These factors are not exhaustive, and courts are "to examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case[.]'" *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)). Courts conduct their evaluation of reasonableness

"from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted).

"'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' ... violates the Fourth Amendment." *Id*. (citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id*. at 396–97.

Plaintiff has a colorable claim of excessive force. The FAC alleges that Holdridge slammed Plaintiff to the ground and applied a dangerous strangulation technique which closed his airway for several seconds. The FAC also alleges that Holdridge applied a wrist lock technique that injured Plaintiff's right wrist. While Plaintiff resisted arrest, the factual allegations do not suggest that he was a danger to the officers or the public. Thus, Plaintiff may proceed with an excessive force claim against Holdridge and Copp.

Plaintiff asserts a separate claim for excessive force against DeRosa for "violently swip[ing] away" Copp's hat from Plaintiff's body. Plaintiff's vague assertions fail to establish a meaningfully intrusive use of force. The court recommends that his claim against DeRosa be dismissed with leave to amend.

**2. "Sexual Assault"**

Plaintiff asserts that during his arrest Copp sexually assaulted him by groping his genitals without wearing personal protective equipment. Plaintiff styles his claim as a sexual assault, which under Nevada law, requires physical "penetration." NRS 200.366(1). As Plaintiff clearly has not alleged penetration, he has failed to state a colorable claim of sexual assault under Nevada law.

Instead, Plaintiff likely intends to assert a claim for battery, which Nevada law defines as "any willful and unlawful use of force or violence upon the person of another." NRS 200.481(1)(a).

Plaintiff's allegations—though slight—are sufficient to plead a claim under NRS 200.481(1)(a). Accordingly, the court should allow Plaintiff to proceed on his claim for battery.

**3. Duty to Intervene**

"Section 1983 imposes liability on '[e]very person who … subjects, or causes [a plaintiff] to be subjected … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Peck v. Montoya*, 51 F.4th 877, 888–89 (9th Cir. 2022). "In some situations, the Constitution may impose on an officer a duty to intervene to prevent an ongoing constitutional violation." *Id*. at 889 (citing *Koon v. United States*, 518 U.S. 81 (1996)); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

"But in general, one does not 'subject' someone to a deprivation of a constitutional right—or 'cause [someone] to be subjected' to such a deprivation —simply by watching others violate the Constitution." *Id*. "To be liable under § 1983, a defendant official 'must be more than a mere bystander.'" *Id*. (quoting *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)). "[A]n official whose 'individual actions' do 'not themselves rise to the level of a constitutional violation' may be held liable under § 1983 only if the official is an 'integral participant' in the unlawful act." *Id*.

While the Ninth Circuit has not "define[d] the minimum level of involvement for liability under the integral-participant doctrine," "precedents have permitted liability in two situations: those in which (1) the defendant knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the

defendant 'set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id*. (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978) and citing *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279–80 (10th Cir. 2008)); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 560–61 (1st Cir. 1989)).

Plaintiff alleges that deputies Copp, DeRosa, Rodriguez, and Brown violated a duty to intervene. Plaintiff's claims against Rodriguez and Brown are vague, conclusory, and should be dismissed. He lodges the same assertion against both defendants: They failed to investigate the alleged unlawful conduct of Holdridge and Copp. But this general assertion alone is insufficient. Plaintiff fails to explain with factual allegations how either defendant was an integral participant in bringing about the alleged unlawful conduct. For that reason, the court recommends that Plaintiff's claim for failure to intervene be dismissed with leave to amend.

Regarding Copp and DeRosa, the complaint plausibly alleges that they played an integral role in the alleged unlawful conduct. The court therefore recommends that a duty to intervene claim be allowed to proceed against defendants Copp and DeRosa.

**4. First Amendment**

To state a First Amendment retaliation claim, a plaintiff must plausibly allege that: (1) a state actor took adverse action against the plaintiff; (2) because of the plaintiff's protected conduct; (3) the adverse action chilled the plaintiff's exercise of First Amendment rights; and (4) the action did not reasonably advance a legitimate governmental objective. *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). The plaintiff must show "not only that the official acted with a retaliatory motive and that the plaintiff was injured, but also that the motive was a 'but-for' cause of the injury." *Nieves v. Bartlett*, 587 U.S. 391, 391 (2019). Importantly for the present

case, a plaintiff pressing a retaliatory arrest claim "must plead and prove the absence of probable cause for the arrest." *Id.* at 401.

As explained above, officers had probable cause to arrest Plaintiff. Amendment will not cure Plaintiff's claim of this defect. Thus, the court recommends that Plaintiff's First Amendment claim be dismissed with prejudice.

**5. Eighth Amendment**

The Eighth Amendment prohibition of cruel and unusual punishment was designed to protect those convicted of a crime. *Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners"); *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022) (Eighth Amendment applies to convicted prisoners (both inside and outside the walls of the prison)).

Plaintiff asserts that Holdridge inflicted cruel and unusual punishment on him by conducting an arrest using excessive force. As the court previously held, because Plaintiff is not a convicted prisoner, his claim is more appropriately addressed under the Fourth Amendment. The court therefore recommends Plaintiff's Eighth Amendment claim be dismissed with prejudice.

**6. Douglas County**

A municipality, including a county, can be liable for the infringement of constitutional rights only under certain circumstances. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–95 (1978). A municipality may not be sued under a respondeat superior theory because it employed an alleged wrongdoer. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 603 (9th Cir. 2019). Rather, a municipality may be liable under § 1983 for "constitutional injuries pursuant to

(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise or discipline; or (4) a decision or act by a final policymaker." *Id.* at 602–03. "To impose liability on a municipality under Section 1983, a plaintiff must prove: "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to [the plaintiff's] constitutional right; and (4) the policy is the moving force behind the constitutional violation." *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (Gordon II) (internal quotation marks and citation omitted).

Here, the FAC lodges a multitude of claims against Douglas County, none of which survives screening. First, Plaintiff asserts a First Amendment claim. According to the FAC, Douglas County "acted to prosecute [Plaintiff] under falsified official documents" that Holdridge allegedly created. But Plaintiff's vague allegations do not assert a legally cognizable claim. He fails to allege that any municipal policy or custom contributed to the alleged violation. Nor does he explain what documents were allegedly forged or the extent to which they were alerted. Importantly, he fails to explain how these allegations connect to any abridgment of his First Amendment rights. Because Plaintiff raises this claim for the first time in his FAC, his First Amendment claim against Douglas County should be dismissed with leave to amend.

Next, Plaintiff alleges that Douglas County violated his Fourth Amendment right to be free from unlawful seizures by "[r]epresenting the state as a victim" during his trial. He also asserts that Douglas County "acted to protect the misconduct" of Holdridge. But again, Plaintiff fails to assert a claim. His assertions are vague, conclusory, and do not plausibly have a nexus to the Fourth Amendment. Because Plaintiff raises this claim for the first time in his FAC, it should be dismissed with leave to amend.

Third, Plaintiff asserts that Douglas County violated his Eighth Amendment right to be free from excessive bail by enforcing an excessive fine of $2,500. "[T]he Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of the valid interests the state seeks to protect by offering bail." *Galen v. County of L.A.*, 477 F.3d 652, 660 (9th Cir. 2007) (citing *United States v. Salerno*, 481 U.S. 739, 754 (1987)). The Ninth Circuit, following the Supreme Court, has assumed without deciding that the clause applies to states. *Id.* at 659. Under NRS 178.4853, Nevada state courts set bail after assessing several factors such as a defendant's length of residence in the community, employment history, prior criminal record and more.

To prevail on an excessive bail claim, the plaintiff must allege that bail was enhanced for purposes unauthorized by the law, or that the bail conditions are excessive for the purpose of achieving "the valid state interests for which bail is intended to serve for a particular individual." *Id.* at 661. "The plain meaning of 'excessive bail' does not require that it be beyond one's means, only that it be greater than necessary to achieve the purposes for which bail is imposed." *Id.* (citing *Salerno*, 481 U.S. at 754; *Jennings v. Abrams*, 565 F. Supp. 137, 138 (S.D.N.Y. 1983)).

Law enforcement officers, however, can only be liable for excessive bail "if they prevented the [judge] from exercising his independent judgment." *Galen*, 477 F.3d at 663. This is because "a judicial officer's exercise of independent judgment in the course of his official duties is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision[.]" *Id.* (citations omitted). A plaintiff must demonstrate that the law enforcement officer "deliberately or recklessly misled the [judge], and that his bail would not have been unconstitutionally excessive but for the officer's misrepresentations." *Id.* at 664 (citation omitted).

Plaintiff fails to state a claim for excessive bail. First, he fails to allege any conduct by officers that deliberately or recklessly misled the court that imposed his bail. Second, he fails to show why that court's decision was unlawful under NRS 178.4853. Therefore, because Plaintiff raises this Eighth Amendment claim against Douglas County for the first time in his FAC, the court recommends that his claim for excessive bail be dismissed with leave to amend.

Lastly, Plaintiff asserts that Douglas County violated his Ninth Amendment rights. The Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986); *see also Bossart v. Cnty. of King*, No. 2:25-CV-00975-JNW, 2025 WL 2614110, at *2 (W.D. Wash. Sept. 10, 2025) ("This rule is well-established and forecloses any Section 1983 claim based solely on the Ninth Amendment."). Because no amendment can save Plaintiff's Ninth Amendment claim, the court recommends that his claim be dismissed with prejudice.

Plaintiff's remaining claims for "Conspiring Violations" and "Duty to Intervene Violations" are vague, conclusory, and lack factual enhancement. Because Plaintiff raises these claims for the first time in his FAC, the court recommends that the claims be dismissed with leave to amend.

**C. Motion for Stay**

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109–10 (9th Cir. 2005) (quoting *Landis v N. Am. Co*, 299 U.S. 248, 255 (1936)). Before the Court stays one case pending the outcome of another, it must consider: (1) the damage that may result from granting a stay; against the (2) hardship or inequity the other

side may face in being required to move forward; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Moreover, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Id.* at 1111 (quoting *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979)). The Court should generally only grant stays of short, reasonable, and fixed durations. *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1067 (9th Cir. 2007).

Plaintiff asks the court to grant a stay to give him additional time to research federal law and acquire evidence. He also requests additional time to allow "related state court proceedings" to resolve. But these are not proper grounds to issue a stay in this case. First, the events underlying this action occurred over two years ago; this time period is more than sufficient time to research federal law. Second, Plaintiff's request for additional discovery time is premature; discovery has not yet begun. Lastly, Plaintiff fails to provide sufficient details for how the resolution of state proceedings impacts the case before this court.

Accordingly, the court recommends that Plaintiff's motion for a stay be denied.

## III. CONCLUSION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order allowing the FAC to proceed with claims for:

(1) Fourth Amendment excessive force against Deputies Holdridge and Copp;

(2) Battery, a violation of NRS 200.481(1)(a), against Deputy Copp;

(3) Failure to intervene against Deputies Copp and DeRosa.

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order dismissing the following claims with leave to amend:

(1) Fourth Amendment excessive force against Deputy DeRosa;

(2) Failure to intervene against Deputies Rodriguez and Brown;

(3) First Amendment claim against Douglas County;

(4) Fourth Amendment claim against Douglas County;

(5) Eighth Amendment claim against Douglas County;

(6) "Conspiring Violations" against Douglas County;

(7) Failure to intervene claim against Douglas County.

1. The Clerk should **SEND** Plaintiff the instructions and form for filing a civil rights complaint.
2. The Plaintiff should have **30 DAYS** from the date of any Order adopting this report and recommendation to file an amended complaint curing the deficiencies noted above. The amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. The complaint should be captioned "Second Amended Complaint" and list this case number. If Plaintiff fails to file an amended complaint within 30 days, this action may be dismissed.

**IT IS FURTHER RECOMMENDED** that the District Judge enter an order dismissing the following claims with prejudice:

(1) Fourth Amendment unlawful seizure claim against Deputies Holdridge and Copp;

(2) First Amendment retaliatory arrest claim against Deputies Holdridge and Copp;

(3) Eighth Amendment use of cruel and unusual punishment claim against Deputy Holdridge;

(4) Ninth Amendment claim against Douglas County.

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion for a stay be denied. (ECF No. 1-3.)

Plaintiff should be aware of the following:

1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge. Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

**IT IS SO ORDERED**.

Dated: September 25, 2026

Craig S. Denney
United States Magistrate Judge